Matthew L. Sharp. Esq.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge St.
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

*Attorneys for Plaintiff*

[Additional Counsel Listed Below]

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN NOSTRAND and DREW RICKERSON, Derivatively on Behalf of AGEAGLE AERIAL SYSTEMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BARRETT MOONEY, GRANT BEGLEY, LUISA INGARGIOLA, THOMAS GARDNER, BRET CHILCOTT, J. MICHAEL DROZD, AND NICOLE FERNANDEZ-MCGOVERN, <br><br> Defendants, <br><br> and, <br><br> AGEAGLE AERIAL SYSTEMS, INC., a Nevada Corporation, <br><br> Nominal Defendant. | Case No.: <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT WITH JURY DEMAND** |

Plaintiffs John Nostrand and Drew Rickerson ("Plaintiffs"), by and through their undersigned counsel, derivatively on behalf of Nominal Defendant AgEagle Aerial Systems, Inc. ("agEagle" or the "Company"), submit this Verified Shareholder

1

Derivative Complaint (the "Complaint"). Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by the Company with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

**NATURE OF THE ACTION**

1. This is a shareholder derivative action brought in the right, and for the benefit, of the Company against certain of its officers and directors seeking to remedy the Director Defendants' (as defined below) breach of fiduciary duties, gross mismanagement and for contribution under Sections 10(b) and 21D of the Exchange Act that occurred from September 3, 2019 to the present (the "Relevant Period") and have caused substantial harm to the Company.

**JURISDICTION**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

4. Venue is proper in this Court because the Company is incorporated in Nevada.

///
///
///

# THE PARTIES

**Plaintiffs**

5. ***Plaintiff John Nostrand*** is, and was at relevant times, a shareholder of the Company. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

6. ***Plaintiff Drew Rickerson*** is, and was at relevant times, a shareholder of the Company. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

7. ***Nominal Defendant AgEagle*** purports to be a commercial drone company. According to the Company's website, it is engaged in the design, engineering, and manufacturing of commercial drones, as well as in providing drone services and solutions to the agriculture industry. AgEagle is incorporated in Nevada with its principal office located in Wichita, Kansas.

**Director Defendants**

8. ***Defendant Barrett Mooney*** ("Mooney") was appointed as Chairman of the Board of Directors ("Board") effective as of May 5, 2020. Prior to that Defendant Mooney served as Chief Executive Officer ("CEO") from July 2018 to May 2020.

9. ***Defendant Grant Begley*** ("Begley") has served as a member of the Board of the Company since June 2016. Defendant Begley is a member of the Audit Committee.

10. ***Defendant Luisa Ingargiola*** ("Ingargiola") has served as a member of the Board of the Company since November 27, 2018. Defendant Ingargiola is the Chair of the Audit Committee.

11. ***Defendant Thomas Gardner*** ("Gardner") has served as a member of the Board of the Company since June 2016 and he and his firm has been engaged as a consultant to the Company. Defendant Gardner is a member of the Audit Committee.

///

Defendants Mooney, Begley, Ingargiola and Gardner are collectively referred to hereinafter as the "Director Defendants."

**Former Director Defendant**

12. ***Defendant Bret Chilcott*** ("Chilcott") is the founder of the Company and served as the Company's President and Executive Chairman of the Board until May 2020.

13. On March 6, 2020, Chilcott tendered his resignation as President of the Company and as Chairman of the Board. The Board and Chilcott reached a mutual agreement that he will continue in his roles as President and Chairman during the Transition Period. Thereafter, Chilcott will no longer continue as an officer or director of the Company but will be an employee of the Company and will advise the Company for a period of 12 months after the Transition Period.

**Officer Defendants**

14. ***Defendant J. Michael Drozd*** ("Drozd") has served as the Company's Chief Executive Officer ("CEO") since May 2020.

15. ***Defendant Nicole Fernandez-McGovern*** ("Fernandez-McGovern") has served as the Company's Chief Financial Officer ("CFO").

**DUTIES OF THE DIRECTOR DEFENDANTS**

16. By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Director Defendants owed the Company and its investors the fiduciary obligations of trust, loyalty, and good faith. The obligations required the Director Defendants to use their utmost abilities to control and manage the Company in an honest and lawful manner. The Director Defendants were and are required to act in furtherance of the best interests of the Company and its investors.

17. Each director owes to the Company and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets. In addition, as

officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

18.     To discharge their duties, the officers and directors were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

///

(e) ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

19. The Director Defendant owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

20. The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the financial condition of the Company. As a result, the Company has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

## **FALSE AND MISLEADING STATEMENTS**

21. On September 3, 2019, the Company issued a press release entitled: *AgEagle Enters the Fast-Growing Commercial Drone Package Delivery Market*. The subtitle read: *Initial Purchase Orders Received and Testing Underway*.

22. Quoting then-CEO Mooney, the press release stated:

"Over the past year, there has been a surge of prominent companies, including Alphabet (Google), FedEx, Intel, Qualcomm, Amazon, Target, Walmart, Alibaba, UPS, 7-Eleven, Uber and many others, actively developing commercial drone-delivery service initiatives as part of their long-term strategic plans. These companies intend to leverage the latest in unmanned aerial vehicle (UAV) technologies to deliver food, consumer products, medicines and other types of lightweight freight direct to consumers and businesses in the fastest, most cost efficient and environmentally responsible manner possible – a practical alternative to costly auto transport."

> *"**We have received our first purchase orders to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas.** We look forward to providing greater detail in the near future on AgEagle's plans to address the needs of this highly specialized new market and the specific role we expect to play in its ongoing development[.]"* [Emphasis added].

23. On April 13, 2020, the Company filed its annual report on Form 10-K with the SEC for the fiscal year ending on December 31, 2019 (the "2019 10-K"). The 2019 10-K was signed by Defendants Mooney, Fernandez-McGovern and Chilcott. Attached to the 2019 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Mooney and Fernandez-McGovern attesting to the accuracy of the financial statements and the disclosure of all fraud. The 2019 10-K expanded on the September 3, 2019 press release by specifying that the first purchase order was from "a major unnamed ecommerce company," stating:

> ***In September 2019, the Company announced that it was actively pursuing expansion opportunities within the Drone Logistics and Transportation market and reported that it had received its first purchase order from a major unnamed ecommerce company to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas***. AgEagle is currently working in close collaboration with this new customer on its tethered test flight operations and ongoing development. In association with the initial purchase order, AgEagle recorded its first revenues in the second half of 2019 and will recognize additional revenues from the project in the first quarter of 2020. [Emphasis added].

24. On April 15, 2020, the Company issued a press release entitled: *AgEagle Receives Follow-On Purchase Orders to Manufacture Commercial Drones for Package Delivery*. The Company's press release announced follow-on purchase orders for its drones:

> "***the expansion of scope for its contracted commercial drone work through the receipt of follow-on purchase orders from a major ecommerce company***. Representing significant new revenue, the new purchase orders relate to the continued manufacturing and assembly of drones used for the testing and refining of the client's commercial drone small package delivery vehicles, systems and operations currently in development." [Emphasis added].

///

7

On April 29, 2020, news broke of a video posted on the personal website and YouTube channel of Defendant Chilcott's daughter. The video showed how to safely unbox the drones and included the logos of AgEagle and Amazon side-by-side. Although the video was removed, various copies and screenshots remain scattered across the Internet.

25. News of this video led to widespread speculation that the Company's "major unnamed ecommerce" partner was in fact Amazon, causing the Company stock to skyrocket from an opening price of $0.95 on April 29, 2020 to as high as $5.15 in intraday trading on April 30, 2020.

26. The mysterious video was not the only signal to investors that the Company had partnered with Amazon to manufacture and assemble drones for the delivery of consumer goods. On July 7, 2020, Defendant Drozd, the Company's new CEO, released a letter to shareholders announcing the Company's expansion to a facility in Wichita, Kansas. The letter stated: "With a goal of materially increasing our manufacturing capacity and proficiencies, AgEagle has finalized its decision to expand our drone-related operations to Wichita, Kansas."

27. On August 4, 2020, the Company issued a press release announcing the details of its new Wichita facility, a 12,000 square foot office and warehouse space located at 8863 E. 34th Street North.

28. The rumor of a partnership between the Company and Amazon continued to grow, with many pointing out the proximity between the Company's new facility and Amazon's new distribution center. An August 4, 2020 article in the *Wichita Business Journal*, for instance, wrote that: "AgEagle's new address is just down Webb Road from Amazon's future distribution center at 4044 N. Toben. There's been speculation of a partnership between the two companies given AgEagle's exploration into drone package delivery."

29. An August 18, 2020 article from the same newspaper entitled *AgEagle plans to begin move to Wichita next month* further reported: "The company has been touting a 'major e-commerce company' since last year as a significant source of future

growth. It has been suspected that the client could be Amazon and its pursuit of drone package delivery."

30. In a September 9, 2020 investor presentation, the Company continued to exploit the Amazon rumor for its own gain, claiming on the introductory slide that "U.S.-based AgEagle will be a leading commercial drone technology, services and solutions provider worldwide," and on the very next slide writing that "Amazon has taught the world to be impatient; people want things faster and cheaper."

31. After feeding the rumor of a potential partnership with Amazon for months – including but not only in the video that floated on the website with ties to Defendant Chilcott – the Company attempted to hide behind a contractual non-disclosure agreement in resisting calls to identify the ecommerce company with which it had partnered.

32. In the second quarter earnings call that took place in August of 2020, and again in statements made to the press ahead of the third quarter earnings call in October of 2020, Defendant Drozd insisted that he could not identify the Company's e-commerce partner.

33. The statements contained in ¶¶ 21-32 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company did not have a partnership with Amazon and in fact never had any relationship with Amazon; (ii) rather than correct the public's understanding about a partnership with Amazon, Defendants were actively contributing to the rumor that the Company had a partnership with Amazon; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

///

## THE TRUTH BEGINS TO EMERGE

34. On October 14, 2020, news broke that Amazon did not have a partnership agreement with the Company, and in fact never did. The *Wichita Business Journal* published a story with the headline: *Exclusive: Who's AgEagle's big customer? We now know who it's not*. The article, which reported that the Company was not partnering with Amazon, stated in part:

> Since AgEagle Aerial Systems announced its move to Wichita, speculation has swirled that it could be coming as part of a partnership with Amazon.
>
> But the retail giant has put the rumor to rest, with a company spokesperson telling the WBJ there is no partnership and that Amazon, to date, has not worked with AgEagle in any capacity.
>
> An AgEagle (NYSE: UAVS) spokesperson had no comment following the Amazon statement to the WBJ.
>
> The drone company, which announced plans in July to relocate from Neodesha, has been touting a "major e-commerce customer" since last year as a growth driver but has said it can't identify that customer due a confidentiality clause in its contract.

35. On February 18, 2021, *Bonitas Research* published a report revealing that AgEagle "was a pump & dump scheme orchestrated by . . . AgEagle founder and former chairman Bret Chilcott and other UAVS insiders to defraud US investors." The *Bonitas Research* report continued:

> In April 2020 rumor of a partnership between Amazon.com, Inc. ("Amazon", Nasdaq: AMZN) & AgEagle was started by a promotional video uploaded to AgEagle's founder and former chairman Bret Chilcott's daughter's personal website and youtube account (the "Promo Video"). Since then, a 54-page due diligence document has circulated on Reddit which at various times referenced the Promo Video and suggested that the AgEagle's partnership with Amazon was real.
>
> We have found no evidence of any "major e-commerce customer" or any drone technology credited to AgEagle other than reference to the Promo Video leaked by AgEagle's founder and former Chairman Bret Chilcott's daughter.
>
> In 4Q'20 an Amazon spokesperson disclosed to reporter Daniel McCoy of the Witchita Business Journal that Amazon specifically does not have any dealings with AgEagle whatsoever.

///

10

36. On this news, shares of the Company dropped $5.13, or 36.4%, to close at $8.96 on February 18, 2021.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

37. Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

38. Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

39. Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

40. The Company Board is currently comprised of four (4) members – Defendants Mooney, Begley, Ingargiola and Gardner. Thus, Plaintiffs are required to show that a majority of the Demand Defendants, *i.e.*, two (2), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

41. The Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning its financial results and future prospects. Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Director Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

42. The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

///

43.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiffs have not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

44.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

45.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

**The Director Defendants Are Not Independent or Disinterested**

**Barrett Mooney**

46.     Defendant Mooney was the Company's CEO. Defendant Mooney is also the Chairman of the Board. Defendant Mooney is not disinterested or independent, and therefore, is incapable of considering demand because Mooney (as CEO) was an employee of the Company who derived substantially all of his income from his employment with the Company, making him not independent. As such, Mooney could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threaten his livelihood.

47.     This lack of independence and financial benefits received by Defendant Mooney renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

48.     Further, Defendant Mooney is a defendant in the securities class action entitled *Madrid v. AgEagle Aerial Systems, Inc., et al.*, Case 2:21-cv-01991 (N.D. Cal.) ("Securities Class Action").

**Defendant Gardner**

49.     Defendant Gardner has served as a member of the Board of the Company since June 2016.

50.     Defendant Gardner and his firm has been engaged as a consultant to the Company.

51.     Defendant Gardner does business with the Company, and the prospect of doing more casts a bit of doubt on his disinterestedness.

**Audit Committee Defendants -- Begley, Ingargiola and Gardner**

52.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for:

> It shall be the responsibility of management to prepare the Company's financial statements and periodic reports and the responsibility of the Auditors to audit those financial statements. […]
>
> ***
>
> Earnings Releases. To review and discuss with management and the Auditors the Company's earnings press releases, including the type of information to be included and its presentation and the use of any pro forma, adjusted or other non-GAAP financial information and any financial information and earnings guidance provided to analysts and ratings agencies, including the type of information to be disclosed and type of presentation to be made.
>
> Management's Discussion and Analysis. To review and discuss with management and the Auditors, as appropriate, the Company's disclosures contained under the caption "Management's Discussion and Analysis of Financial Condition and Results of Operations" in its periodic reports to be filed with the SEC.

53.     Defendants Begley, Ingargiola and Gardner breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failed to ensure that adequate internal

controls were in place regarding the serious business reporting issues and deficiencies described above. Therefore, Defendants Begley, Ingargiola and Gardner face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## FIRST CAUSE OF ACTION

### Against The Director Defendants for Breach of Fiduciary Duties

54. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

55. The Director Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Director Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

56. The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

57. The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to improperly misrepresent the Company's publicly reported financials. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

58. As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

59. As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the

///

Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION
### (Against Defendants for Waste of Corporate Assets)

60. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

61. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period. It resulted in continuous, connected, and ongoing harm to the Company.

62. As a result of the misconduct described above, Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

63. As a result of the waste of corporate assets, Defendants are liable to the Company.

64. Plaintiffs, on behalf of the Company, have no adequate remedy at law.

## THIRD CAUSE OF ACTION
### Against Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney for Contribution Under Sections 10(b) and 21D of the Exchange Act

65. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

66. The Company, along with Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney, are named as defendants in the Securities Class Action, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of law, the

Company's liability will be in whole or in part due to Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney's willful and/or reckless violations of their obligations as officers, directors, and controlling shareholder of the Company.

67. Through their positions of control and authority as officers, directors, and controlling shareholder of the Company, Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Action and herein.

68. As such, Defendants Drozd, Fernandez-McGovern, Chilcott and Mooney are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B. Awarding, against the Director Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D. Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 17, 2021

**MATTHEW L. SHARP, LTD.**

/s/ Matthew L. Sharp
Matthew L. Sharp
Nevada Bar No. 4746
432 Ridge St.
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

Gregory M. Egleston
**GAINEY McKENNA & EGESTON**
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmlaw2001@yahoo.com

*Counsel for Plaintiff*

17

## **VERIFICATION**

I, John Nostrand, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of AgEagle Aerial Systems, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder of AgEagle Aerial Systems, Inc. common stock.

_____  3/16/2021
JOHN NOSTRAND

## VERIFICATION

I, Drew Rickerson, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of AgEagle Aerial Systems, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder of AgEagle Aerial Systems, Inc. common stock.

_____
DREW RICKERSON